# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 19, 2015

## THOMAS EUGENE LESTER v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Hamilton County
### No. 288339    Don W. Poole, Judge

---

### No. E2014-01625-CCA-R3-PC – Filed March 31, 2015

---

The Petitioner, Thomas Eugene Lester, appeals as of right from the Hamilton County Criminal Court's denial of his petition for post-conviction relief. In this appeal, the Petitioner contends that he received the ineffective assistance of counsel and that his guilty plea was unknowingly and involuntarily entered because he was suffering from an untreated medical condition at the time he entered his plea. Discerning no error, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

James W. Clement, III, Chattanooga, Tennessee, for the Appellant, Thomas Eugene Lester.

Herbert H. Slatery, III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Neal Pinkston, District Attorney General; and Bates W. Bryan, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
## FACTUAL BACKGROUND[1]

On January 14, 2013, the Petitioner pled guilty to theft of property valued at $1,000 or more in case number 284721 and was sentenced to "supervised probation for a

---

[1] Initially, we note that the Petitioner has not included documentation of the trial court proceedings for his underlying charges in the record. Therefore, our understanding of the underlying charges is gleaned from the transcript of the guilty plea submission hearing, which was made an exhibit to the post-conviction hearing, the post-conviction court's orders, and the testimony from the post-conviction hearing.

term of three years, for removal from which the [P]etitioner could petition the [c]ourt after successful completion of one year." Thereafter, the Petitioner was charged in case number 287087 with a violation of the Motor Vehicle Habitual Offenders Act ("the MVHOA"). Around the same time, he was also charged with aggravated assault.[2]

At the guilty plea submission hearing on May 6, 2013, the prosecutor stated that the Petitioner was conceding that he violated his probation in case number 284721 and that he would "be released on the time that he's served and the balance of the sentence will be on supervised probation." The State clarified that the length of the probation was three years. With respect to case number 287087, the Petitioner entered a plea of guilty to violation of the MVHOA and agreed to a one-year sentence, suspended to unsupervised probation, to run consecutive to case number 284721.

The State explained that the basis for the probation violation was an aggravated assault that "was dismissed down in general sessions court just recently." The MVHOA violation stemmed from the Petitioner's driving a motor vehicle on November 27, 2012, in Hamilton County. When asked for his driver's license, the Petitioner was unable to produce one and was subsequently taken into custody. The Petitioner had been declared a habitual motor vehicle offender in May 1999.

The trial court engaged the Petitioner in a plea colloquoy, explaining that he was pleading guilty and detailing the rights he was waiving by entering a plea. The Petitioner said that he understood the charges he was facing as well as the relevant maximum and minimum sentences. When asked whether he understood that he had the right to plead not guilty and proceed to trial, the Petitioner responded, "I do understand that, sir, but there's another side to the problem here, sir, and I just - - I understand." The court continued to question the Petitioner, and he agreed that he understood his rights.

The court asked the Petitioner whether he had signed the petition to enter a plea of guilty, and the Petitioner responded affirmatively. The Petitioner agreed that he either read the petition himself or had someone read it to him. He indicated that he understood the contents of the petition and the consequences of entering a guilty plea.

The trial court asked the Petitioner whether anyone had threatened him in any way or promised him anything other than the plea deal, and the Petitioner responded, "Yes, sir." The trial court asked the Petitioner what he had been promised, and the Petitioner answered, "Nothing, no, no, sir." The trial court inquired further, asking the Petitioner

---

[2] The exact timing of the aggravated assault charge is not apparent from the record. The case number assigned to the aggravated assault is also unclear.

whether he was listening to the court's questions. The Petitioner indicated that he was listening and agreed that that the factual account provided by the prosecutor was true.

The trial court accepted the Petitioner's guilty plea for driving while being a habitual motor vehicle offender and sentenced him to one year as a Range I, standard offender. The sentence was suspended to time served with the remainder to be served on unsupervised probation for one year. The court asked the Petitioner whether he heard "the agreement that [the prosecutor] announced in the other case, that you're going to be on supervised probation for a period of three years and then this sentence will run consecutive to that one?" The Petitioner indicated that was his understanding of the agreement.

On May 10, 2013, the Petitioner filed two pro se post-conviction petitions. The first petition alleged that he was induced to plead guilty to violating the MVHOA because he was refused medical treatment while in jail. The second petition alleged that he had not received the plea deal that he was promised for his probation revocation.

On June 4, 2014, the post-conviction court entered an order addressing both petitions. With respect to the Petitioner's probation revocation in case number 284721, the trial court determined that the Petitioner failed to state a colorable claim and summarily dismissed the issue. The court cited to Young v. State, 101 S.W.3d 430, 432 (Tenn. Crim. App. 2002), noting that "claims arising from the revocation of probation are not cognizable in post-conviction proceedings." For the violation of the MVHOA in case number 287087, the post-conviction court concluded that the petition stated a colorable claim. Thereafter, the Petitioner was appointed counsel and an amended petition for post-conviction relief was filed.

In his amended petition, the Petitioner alleged that his trial counsel was ineffective for failing to advise him that the guilty plea submission hearing could be continued and medical treatment for his "severe ailments" ordered. The Petitioner averred that he was suffering from a urinary blockage at the time of his guilty plea and had not received proper medical attention while incarcerated. The Petitioner contended that he was "unduly coerced" into accepting the plea offer so that he could be released from custody and seek medical treatment.

A post-conviction hearing was held on June 25, 2014. Trial counsel testified that in May 2013 he was appointed to represent the Petitioner on a probation violation and violation of the MVHOA. He remembered that the Petitioner "had some medical issues involving . . . his . . . urinary tract." Trial counsel discussed this medical issue with the Petitioner and told the Petitioner that he would notify the nurse at the jail about the problem, which he did. According to trial counsel, the jail responded that it "would look

into that," which trial counsel characterized as a "general response . . . that [he] usually get[s]."

Trial counsel recalled talking to the Petitioner in the holding cell before his guilty plea submission hearing. Counsel relayed the State's offer to the Petitioner, but "[the Petitioner] was annoyed, he didn't like the offer." Counsel explained that if the Petitioner accepted the offer, "he would be out that day." However, trial counsel told the Petitioner that the decision whether to accept the offer rested with the Petitioner and that if he did not accept the deal, they could "have a hearing." The Petitioner told trial counsel that he wanted to have the hearing right then, but trial counsel told him that it would have to be scheduled for a later date so that trial counsel could arrange for witnesses. Trial counsel told the Petitioner that they could "handle the probation violation then and . . . set the other one for trial."

The Petitioner was "upset about that" and told trial counsel that he was "having a hard time" and wanted to plead. Trial counsel assured the Petitioner that if he wanted to wait and go to trial, he would call the nurse again and "look into [his medical condition] if it's really an issue." Trial counsel testified that when the Petitioner said he was "having a hard time," he understood that the Petitioner was referring to his psoriasis. According to trial counsel, the Petitioner eventually decided to take the plea, saying, "I just want to get this over with, I want to get out."

Trial counsel testified that he could not say whether the Petitioner's medical condition was the "impetus for him taking the plea." He explained that many of his clients "just want out" and that he told the Petitioner that there was medical staff at the jail that could help him if he chose not to take the plea deal. Trial counsel said that he advised the Petitioner to do "what he wanted to do." According to trial counsel, he informed the Petitioner that he would "try to get [a hearing] as soon as possible."

On cross-examination, trial counsel testified that the Petitioner pled as a Range I offender, although, to the best of his recollection, the Petitioner actually qualified as a Range III offender. Trial counsel recalled that the Petitioner received one year of unsupervised probation for the MVHOA violation. Trial counsel testified that after reviewing the underlying facts, he believed the Petitioner was guilty of violating the MVHOA, and he remembered advising the Petitioner that the State's offer was "a good deal."

The Petitioner testified that he had "a real bad case of psorias[i]s," which he described as a skin condition that can also affect his ability to urinate. He testified that he was currently suffering from psoriasis and that he was having the same issue when he entered his guilty plea in May 2013. The Petitioner usually treated the psoriasis with

-4-

daily medications as well as a shot every two months. According to the Petitioner, when he takes his medication he does not suffer from the symptoms associated with his illness.

The Petitioner testified that he was currently back in custody and did not have access to the proper medication and that when he asked for it, "they" gave him "some other cream for it." He testified that his regular medication had not been delivered to jail personnel because he did not "have no one [sic] to do that." The Petitioner clarified that he was currently receiving a topical cream that was not effective and that although he put in a request to see a doctor, he had not seen one in the four months he had been in custody.

He testified that prior to the guilty plea submission hearing, he was not receiving proper medical care for his psoriasis. According to the Petitioner, he was given a topical cream at the jail. The Petitioner testified that his normal medication, which was effective, was an ointment and that "a cream and an ointment [are] different, very different."

The Petitioner testified that he could not read very well and that trial counsel did not go over the petition to plead guilty with him. He acknowledged that he signed the petition to plead guilty and that he understood he was pleading guilty. He also agreed that the trial court went over the guilty plea with him during the guilty plea submission hearing.

The Petitioner testified that he attempted to raise his medical issue at the guilty plea submission hearing when he told the trial court that "there's another side to the problem." According to the Petitioner, trial counsel advised him that if he did not take the plea, he would not be released from jail that day. The Petitioner testified that he took the plea deal and was able to immediately see his doctor and receive effective treatment for his condition. His condition improved, and he was able to continue to take his medication regularly until he went back into custody.

The Petitioner testified that his medical condition rendered his guilty plea to the violation of the MVHOA involuntary. He further testified that he was facing a probation violation, that he knew he had a right to a hearing on the matter, and that he took the deal because he would be released from jail that day and could seek medical treatment.

On cross-examination, the Petitioner admitted that he had a lengthy arrest record and that he had been through the "plea process" many times. He recalled that at the guilty plea submission hearing in the present case, he hesitated when the trial court asked him whether he felt threatened because he "wanted to say something else." The Petitioner testified that he felt threatened "[t]o take something or stay in jail when I couldn't use the bathroom."

-5-

Denise Cowings testified that the Petitioner was "like a brother to her" and that he resided with her when not in custody. She testified that the Petitioner took regular medication for his psoriasis and that the medication was at her house. According to Ms. Cowings, she had not been able to get in touch with the Petitioner since he had been in custody and did not know whether the jail would allow the Petitioner to receive an "outside medication."

The Petitioner was recalled to the stand, and the trial court asked him to clarify whether he had an aggravated assault case pending in May 2013. The Petitioner testified that he "came back to your court to handle the driving situation," and the court told the Petitioner that it "couldn't let [him] leave because [he] had a warrant downstairs for aggravated assault." He was then taken into custody. The Petitioner testified that the charges were later dismissed in sessions court after the person who made the assault allegations recanted his story. Nevertheless, the guilty plea submission hearing followed, and the Petitioner admitted to violating his probation and also to violating the MVHOA. His three-year probationary sentence was then changed from "one-year active to three years active," and he received an additional year of unsupervised probation for violating the MVHOA. The Petitioner asserted that he did not understand that the probation revocation would result in three years of supervised probation, and he wanted to go "back to square one" and try his cases.

The post-conviction court issued a written order denying the Petitioner post-conviction relief. The court accredited trial counsel's testimony that he advised the Petitioner about the availability of a hearing on another day and that trial counsel assured the Petitioner that he would request medical treatment for the Petitioner. The court found no deficiency in counsel's performance. The court again concluded that the Petitioner's claims with respect to his probation revocation were not cognizable in a post-conviction proceeding.

The post-conviction court further concluded that the Petitioner's plea was knowing and voluntary, relying on the following factual findings: the Petitioner's extensive criminal record and familiarity with the plea process; trial counsel's competence; the Petitioner's awareness of the charges and consequences of the pleas; and the Petitioner's decision to not bring up his medical condition during the guilty plea submission hearing. The court specifically found that the Petitioner did not explain why he did not accept trial counsel's offer to obtain appropriate medical treatment and also noted that the Petitioner had not provided any evidence of a request for specific treatments or a rejection of such request. The court concluded that "the [P]etitioner was aware of the options available to him and the plea on the new charge was his voluntary and intelligent choice among those options."

ANALYSIS

First, we note that to the extent the Petitioner challenges the revocation of his probation, the trial court properly determined that such a claim is not cognizable in a post-conviction proceeding. See Young, 101 S.W.3d at 433 (holding that "the Tennessee Post-Conviction Procedures Act does not permit the filing of a petition under its provisions to attack collaterally the validity of a proceeding to revoke the suspension of sentence and/or probation"). Therefore, we need only consider the validity of the Petitioner's guilty plea with respect to his violation of the MVHOA.

*I. Standard of Review*

In a post-conviction proceeding, the burden is on the Petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

*II. Ineffective Assistance of Counsel*

On appeal, the Petitioner first contends that trial counsel was ineffective for allowing him to accept a plea deal when trial counsel knew that the Petitioner was suffering from a medical condition that was causing him pain. He asserts that he would not have accepted the plea deal but for his medical condition and that trial counsel's failure to obtain a continuance deprived him of the opportunity to litigate his claims. The State responds that the trial court properly concluded that trial counsel was effective and appropriately advised the Petitioner that he could challenge the charges at a later hearing and that trial counsel would speak with jail officials about getting the Petitioner proper medical treatment.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the

substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The trial court concluded that the Petitioner did not suffer from deficient representation. The evidence presented at the post-convictoin hearing reflects that trial counsel discussed the plea agreement with the Petitioner and explained that if he chose not to accept the deal, he could receive a hearing on the matter. The Petitioner complained about medical issues and expressed reservations about extending his time in jail. Trial counsel assured the Petitioner that if he chose to decline the plea deal and proceed with the charges, counsel would contact the jail nurse again about the medical care that the Petitioner needed while in jail. The Petitioner responded that he wanted to get it over with and accept the deal. The evidence does not preponderate against the trial court's conclusion that the Petitioner received effective assistance of counsel. This issue is without merit.

### III.  Involuntary and Unknowing Guilty Plea

Next, the Petitioner contends that his untreated medical condition rendered his guilty plea unknowing and involuntary. The State responds that the Petitioner was fully apprised of his rights and knew he had the option to refuse the plea deal with counsel's assurances that his medical condition would be treated. The State further responds that the Petitioner has not supported his contention with medical records that would substantiate the basis of his claim.

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set forth in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, in Mackey the Tennessee Supreme Court required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from

-8-

ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

At the guilty plea submission hearing, the Petitioner indicated that he understood the charges against him and the details of his guilty plea. Although at one point he did say, "there's another side to the problem," he failed to elaborate and never mentioned that he was suffering from a medical condition that affected his decision-making abilities. At the post-conviction hearing, trial counsel testified that prior to the guilty plea submission hearing, he advised the Petitioner that the hearing could be postponed and that the decision to plead was entirely up to the Petitioner. Trial counsel also reassured the Petitioner that he would receive appropriate medical care if he remained in custody. The Petitioner acknowledged that he had a lengthy arrest record and was familiar with the plea process.

We note that the Petitioner has failed to present any medical records or testimony, other than his own bare assertions, in support of his claim that his psoriasis rendered his plea unknowing or involuntary. Ordinarily, a petitioner should provide medical records or medical testimony when relying on a medical condition to assert that a plea was not entered voluntarily or knowingly. See Darrell Wayne Bumpas v. State, No. M2010-00222-CCA-R3-PC, 2010 WL 5140673, at *8 (Tenn. Crim. App. Dec. 14, 2010) (concluding that the petitioner's "bare allegations, unsupported by medical testimony, about the use of psychiatric drugs was insufficient to support a claim that his guilty plea was not knowingly and voluntarily entered"). Although in Bumpas the petitioner asserted that his pleas were unknowingly and involuntarily entered because he had not received medication for a mental health condition, the same reasoning supports a similar requirement for claims that a physical medical condition rendered a plea unknowing or involuntary.

The post-conviction court found that the Petitioner understood what he was pleading guilty to and knew that if he did not wish to plead guilty, he could come back to

court at a later date. The post-conviction court noted that the Petitioner failed to present any evidence that he made requests for specific medical treatments or that such requests were denied. Furthermore, the court noted that the Petitioner offered no explanation as to why he refused counsel's offer to help the Petitioner get proper medical treatment if he chose not to accept the deal. The post-conviction court concluded that the Petitioner's plea was entered voluntarily and knowingly and the evidence does not preponderate against this conclusion. The Petitioner's claim is without merit.

## CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____

D. KELLY THOMAS, JR., JUDGE